UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

ROSEMARIE A. SUPPA,

                                        Plaintiff,

        v.                                                          **DECISION AND ORDER**
                                                                         15-CV-55S
CAROLYN W. COLVIN,
ACTING COMMISSIONER OF SOCIAL SECURITY,

                                        Defendant.

        1.      Plaintiff Rosemarie A. Suppa challenges an Administrative Law Judge's
("ALJ") determination that she is not disabled within the meaning of the Social Security
Act ("the Act").   Plaintiff alleges that she has been disabled since January 1, 2006, due
to bipolar disorder and depression.   Plaintiff contends that her impairments render her
unable to work.   She therefore asserts that she is entitled to Disability Insurance
Benefits ("DIB").

        2.      On August 15, 2011, Plaintiff applied for DIB. The Commissioner denied
her application on October 28, 2011.   Plaintiff requested a hearing on January 3, 2012.
Pursuant to that request, ALJ William Weir held a hearing on February 7, 2013.   Plaintiff
was represented by counsel at the hearing, where she appeared in person and testified.
The ALJ considered the case *de novo*, and, on August 12, 2013, he issued a decision
denying Plaintiff's application for benefits.   On December 11, 2014, the Appeals Council
denied Plaintiff's request for review.   Plaintiff filed the current civil action on January 17,
2015, challenging Defendant's final decision.[1]

        3.      On December 30, 2015, Plaintiff filed a Motion for Judgment on the
Pleadings under Rule 12(c) of the Federal Rules of Civil Procedure.  (Docket No. 11).

---

[1] The ALJ's August 12, 2013 decision became the Commissioner's final decision in this case when the
Appeals Council denied Plaintiff's request for review.

On April 14, 2016, Defendant filed her own Motion for Judgment on the Pleadings. (Docket No. 15).  This Court took the motions under advisement without oral argument. For the reasons discussed below, Defendant's motion is granted and Plaintiff's is denied.

4.      A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled.  See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990).   Rather, the Commissioner's determination will be reversed only if it is not supported by substantial evidence or there has been a legal error.  See Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979).  Substantial evidence is that which amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971).  Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld.   See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

5.      "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight."   In re Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988).  If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]."   Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y.

1992).   In other words, this Court must afford the Commissioner's determination considerable deference, and will not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review."   Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

6.   The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled under the Act.   See 20 C.F.R. §§ 404.1520, 416.920.   The United States Supreme Court recognized the validity of this analysis in Bowen v. Yuckert, and it remains the proper approach for analyzing whether a claimant is disabled.   482 U.S. 137, 140-42, 107 S. Ct. 2287, 2291, 96 L. Ed. 2d 119 (1987)

7.   This five-step process is detailed below:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.  If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities.  If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.  Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work.  Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam) (quotations in original); see also Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999); 20 C.F.R. § 404.1520.

8.      While the claimant has the burden of proof on the first four steps, the Commissioner has the burden of proof on the fifth and final step.  See Bowen, 482 U.S. at 146 n.5; Ferraris v. Heckler, 728 F.2d 582, 584 (2d Cir. 1984).   The final step is divided into two parts.   First, the Commissioner must assess the claimant's job qualifications by considering his physical ability, age, education, and work experience. Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform.  See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(f); Heckler v. Campbell, 461 U.S. 458, 460, 103 S. Ct. 1952, 1954, 76 L. Ed. 2d 66 (1983).

9.      In this case, the ALJ made the following findings with regard to the five-step process set forth above: (1) Plaintiff did not engage in substantial gainful activity from January 1, 2006, her alleged onset date, through September 30, 2012, her date last insured (R. at 14);[2] (2) Plaintiff's bipolar disorder constitutes a "severe" impairment within the meaning of the Act (id.); (3) through the date last insured, Plaintiff did not have an impairment or combination of impairments that met or medically equaled any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (R. 15); (4) Plaintiff retained the residual functional capacity ("RFC") to perform a full range of work at all exertional levels, but Plaintiff's non-exertional limitations are that she may not perform complex work and may not have more than occasional contact with coworkers, the public, or supervisors (R. at 16); and (5) Plaintiff has no past relevant work.  (R. at 26).

---

[2] Citations to the underlying administrative record are designated as "R."

Considering Plaintiff's advanced age; her college education; her lack of past relevant work; her non-exertional limitations; and her RFC for a significant range of light work, the ALJ determined that Medical-Vocational Rule 201.20 directed a finding of "not disabled." (R. at 22, 27). Ultimately, the ALJ determined that Plaintiff was not under a disability, as defined by the Act, at any time from January 1, 2006, her alleged onset date, through September 30, 2012, her date last insured. (R. at 23).

10.     Plaintiff now challenges the ALJ's decision. She first argues that the ALJ did not give sufficient weight to the opinion of Cheryl D. Chambers, her licensed mental health counselor ("LMHC"). Second, Plaintiff argues that the mental RFC assessments support a finding of disabled. Third, Plaintiff argues that the ALJ failed to consider her age in combination with her inactivity in the workplace in determining that she could re-enter the workforce. Finally, Plaintiff argues that the ALJ failed to adequately develop the record. Each argument will be discussed in turn.

11.     Plaintiff's first argument is that the ALJ failed to give sufficient weight to the opinion of LMHC Chambers, with whom she had an extensive relationship. But, as the ALJ noted, mental health counselors are not considered "acceptable medical sources." 20 C.F.R. § 404.1513(a). Rather, they are considered "other sources." 20 C.F.R. § 404.1513(d). Social Security Ruling ("SSR") 06–03p provides that, in evaluating "all relevant evidence in a case record," the ALJ must consider not only opinion evidence from "acceptable medical sources," but also evidence provided by "'non-medical sources including . . . counselors. . . .'" 2006 WL 2329939, at *2 (S.S.A. Aug. 9, 2006). Opinions from "other sources" "are important and should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file." Id. at *3. "While the opinion[s] [of other sources] do[ ] not

command the same weight as a physician's, [they are] nevertheless entitled to some consideration." Marziliano v. Sullivan, 771 F. Supp. 69, 75 (S.D.N.Y. 1991).

12.     "While the Commissioner is thus free to decide that the opinions of 'other sources' ... are entitled to no weight or little weight, those decisions should be explained." Sears v. Astrue, No. 2:11–CV–138, 2012 WL 1758843, at *3 (D.Vt. May 15, 2012); see also Colon v. Astrue, No. 11–CV–210A, 2013 WL 2245457, at *10 (W.D.N.Y. May 21, 2013) (finding abuse of discretion for an ALJ to "entirely ignore" vocational rehabilitation counselor's assessment of claimant's RFC).  In evaluating the opinions of "other sources," SSR 06-03p directs the Commissioner to use the same factors in evaluating the opinions of "other sources" as are used to evaluate the opinions of "acceptable medical sources," including treating physicians.  2006 WL 2329939, at *4. These factors include but are not limited to the length of the treatment relationship, the frequency of evaluation, and the degree to which the opinion is supported and consistent with the record."  Id.

13.     In addition, "[a]lthough the ALJ's conclusion may not perfectly correspond with any of the opinions of medical sources cited in his decision, he [is] entitled to weigh all of the evidence available to make an RFC finding that [is] consistent with the record as a whole."  Matta v. Astrue, 508 F. App'x 53, 56 (2d Cir. 2013).  And "when reviewing the medical evidence, the ALJ has the authority to select among conflicting opinions". Pines v. Comm'r of Soc. Sec., No. 13-cv-6850-AJN-FM, 2015 WL 872105, at *3 (S.D.N.Y. Mar. 2, 2015).

14.     In the present case, the ALJ explained that he gave less weight to the opinion of LMHC Chambers.  (R. at 21).  LMHC Chambers opined that "it would be impossible for [Plaintiff] to engage in gainful employment," and that "her continued

reliance on hospitalizations to stabilize herself is indication that she is unfit to work."  (R. at 384).  The ALJ stated that he considered her opinion as an "other source" pursuant to 20 C.F.R. § 416.913(d).  (R. at 21).   The ALJ properly gave LMHC Chambers's opinion less weight as it is not supported by the record, as explained further below.   In any event, the ALJ incorporated some of LMHC Chambers's opinions into his RFC.   For example, LMHC Chambers noted Plaintiff's possible relationship issues in a work environment, which the ALJ incorporated into his RFC by including the non-exertional limitation that Plaintiff may not have more than occasional contact with co-workers, the public, or supervisors.  (R. at 16, 384).

15.     The ALJ properly gave more weight to the opinions of the State Agency Reviewing Psychologists, Dr. Echevarria and Dr. Hill-Keyes.  Dr. Echevarria opined that Plaintiff is essentially stable when compliant with medication, and that she can perform simple tasks in a low-stress setting.  (R. at 323).  Dr. Hill-Keyes opined that Plaintiff is able to understand, remember, and carry out 1-3 step work-like procedures, maintain adequate concentration and attention for extended periods within a schedule, and maintain regular, punctual attendance within customary tolerances with mild limitation. (R. at 361).  Their opinions were consistent with the record as a whole, including: Global Assessment Functioning ("GAF") scores predominately in the range of 62 to 65[3] (R. at 190-310, 392)[4] and the opinions of medical sources including Dr. Cartagena and April

---

[3]  The GAF score is a numeric scale ranging from 0 (lowest functioning) to 100 (highest functioning). Am. Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders 32* (4th ed.2000). The GAF is a scale promoted by the American Psychiatric Association to aid in tracking the clinical progress of individuals with psychological problems in global terms. Id.  A GAF score of 61-70 denotes some mild symptoms or some difficulty in occupational, social, or school functions, but the individual has some meaningful interpersonal relationships and generally functions well. Id.

[4] Twelve days before the ALJ's decision, on July 31, 2013, the Social Security Administration issued a bulletin limiting the use of GAF scores, however, the ALJ, like in Marinella v. Colvin, did not give the GAF scores undue or mechanical weight, even in light of the new guidance.  See No. 13–CV–2453–JG., 2014 WL 183957, at *5 (E.D.N.Y.

Kilgour, a nurse practitioner (R. at 19-20).  Dr. Cartagena mostly assigned Plaintiff a GAF score of 62, with only a few scores of 58. (R. at 190-308).  Nurse Kilgour assessed Plaintiff with a GAF of 65 on her initial assessment and in the range of 58-65 on subsequent assessments. (R. at 440, 442, 444, 446 448). On June 12, 2012, Nurse Kilgour found that Plaintiff's mood was "even keeled;" she had good insight and judgment; she was oriented in all spheres; and her thoughts were well organized and coherent.  (R. at 439).

16.    Plaintiff also argues that the ALJ erred in relying on the opinions of Dr. Hill-Keyes, a State Agency Review psychologist. Specifically, Plaintiff argues that there was no proof that Dr. Hill-Keyes was in fact a psychologist, and, because she signed her name as Ph.D, she is not a psychologist. Plaintiff notes that there are no credentials for Dr. Hill-Keyes in the record, which is in fact true.  Publicly available records, however, establish that Dr. Hill-Keyes is a licensed New York State psychologist.[5]  As a licensed psychologist, Dr. Hill-Keyes is a fully qualified "acceptable medical source." See 20 C.F.R. § 404.1513(a)(2).  Thus, the ALJ properly relied on her opinion.

17.    Plaintiff argues that because of her long relationship with LMHC Chambers, the ALJ should have given her opinion greater weight.  In this regard, Plaintiff relies on Cole v. Astrue, a Sixth Circuit case. 661 F.3d 931 (6th Cir. 2011).  In Cole, the ALJ gave no reason for not crediting the opinion of the claimant's treating counselor.  Id. at 939.  The ALJ failed to even mention the treating counselor.  Id.  Here, in contrast, the ALJ incorporated part of LMHC Chambers's opinion into his RFC

---

Jan. 14, 2014) ("[g]enerally, the guidance instructs ALJs to treat GAF scores as opinion evidence; the details of the clinician's description, rather than a numerical range, should be used").
[5] See http://www.nysed.gov/coms/op001/opsc2a?profcd=68&plicno=007985&namechk=HIL (last visited July 14, 2016).

determination and provided valid reasons for the weight given to the overall opinion, as discussed above.  Thus, this Court finds no error in the ALJ's consideration of LMHC Chambers's opinion.

18.    Plaintiff's second argument is that the mental RFC assessments support a finding of disabled.  Specifically, Plaintiff points to the checked boxes that Dr. Echevarria and Dr. Hill-Keyes marked indicating that she was moderately limited in her ability to perform activities within a schedule, maintain regular attendance, be punctual with customary tolerances, and maintain attention and concentration for extended periods.  (R. at 321, 325-26, 355, 359-60).

19.    The Second Circuit has consistently held that opinions rendered on "check-box" forms are only marginally useful, since they provide little meaningful insight into the basis for the clinician's findings.  See Klodzinski v. Astrue, 274 F. App'x 72, 73 (2d Cir. 2008) (holding that a standardized multiple-choice form completed by a treating physician was only marginally helpful); Halloran v. Barnhart, 362 F.3d 28, 32 (2d Cir. 2004) (stating that the standardized form was only marginally useful).  Additionally, the Program Operations Manual System ("POMS") states that Section I of the mental RFC form is to be used only as a worksheet to help decide any possible functional limitations and does not itself constitute an assessment of the mental RFC.  POMS DI 24510.060(B)(2)(b).  The POMS states that Section III (Functional Capacity Assessment) is the section within which the actual mental RFC is determined, which is what the ALJ must consider in determining Plaintiff's ability to perform mental work.  POMS DI 24510.060(B)(4); POMS DI 25020.010(B).

20.    In addition to the checked boxes of the mental RFC, Dr. Echevarria incorporated his Psychiatric Review Technique (PRT) form into his Functional Capacity

Assessment.  (R. at 327 *referring to* R. at 323).  His assessment, as previously noted, found that Plaintiff was essentially stable when she was compliant with her medication, and that her periods of decompensation are primarily centered around the periods where she does not take her medication.  (R. at 323).  He also found Plaintiff to have continued improvement through 2011, and that she retained the capacity to perform work involving simple tasks in a low-stress setting.  (Id.)  Dr. Hill-Keyes also submitted a Functional Capacity Assessment in addition to the checked boxes of the mental RFC. (R. at 361).  As also noted above, Dr. Hill-Keyes opined that Plaintiff is able to understand, remember, and carry out 1-3 step work-like procedures, maintain adequate concentration and attention for extended periods within a schedule, and maintain regular, punctual attendance within customary tolerances with mild limitation.  (Id.)  As it is the assessment, and not the checked boxes that are the actual mental RFC, the ALJ properly interpreted and incorporated these assessments into his finding of not disabled.  See POMS DI 24510.060(B)(4); POMS DI 25020.010(B).

21.    Plaintiff's argument that the moderate checked boxes imply that she is disabled is misguided.  According to the POMS, "moderately limited" does not require that Plaintiff's capacity is at a level that is unacceptable in a national workforce, and, in addition, the capacity or limitation must be detailed in Section III.  See POMS DI 24510.063(B)(2); Smith v. Comm'r of Soc. Sec., 631 F.3d 632, 636–37 (3d Cir. 2010). Courts in this district have similarly found that "moderately limited" activities as determined by state agency review psychologists' mental RFC assessments do not represent Plaintiff's actual RFC.  See, e.g., Ferguson v. Astrue, No. 09–CV–697S, 2010 WL 7746198, at *6–7 (W.D.N.Y. July 30, 2010) (finding that the limitations indicated by

the claimant's doctor on Section I of Form do not constitute claimant's actual RFC). Thus, the ALJ did not err in his finding of not disabled.

22.     Plaintiff's third argument is that the ALJ failed to consider Plaintiff's age in combination with her inactivity in the workplace in determining whether Plaintiff could re-enter the workforce.   Plaintiff points to POMS § DI 28015.310 for her argument that a person's age may affect her ability to re-enter the workforce once she is over 50 and has not worked for a long time.   But, as Plaintiff concedes, POMS § DI 28015.310 applies only to situations involving continuing disability review.   Even if POMS § DI 28015.310 were to be considered out of context, it assumes a long, continuing disability, which is not present in Plaintiff's case.

23.     Also contrary to Plaintiff's argument, the ALJ specifically considered her age and work experience in conjunction with the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2.  Because Plaintiff has no exertional limitations, Medical-Vocational Rule 204.00 applies.  Thus "an impairment which does not preclude heavy work (or very heavy work) would not ordinarily be the primary reason for unemployment, and generally is sufficient for a finding of not disabled, even though age, education, and skill level of prior work experience may be considered adverse."   20 C.F.R. Pt. 404 Subpt. P, App. 2 Sec 204.00.   Thus, the ALJ properly considered Plaintiff's age and inactivity in the workplace.

24.     Finally, Plaintiff argues that the ALJ failed to adequately develop the record.  Specifically Plaintiff argues that she should be given an opportunity to explain the reasons for her noncompliance with her prescribed treatment.  Plaintiff relies on SSR 82-59 in support of her argument that the ALJ should have investigated her reasons for non-compliance.  1982 WL 31384.  Defendant argues that SSR 82-59 only

applies when the ALJ first concludes that the claimant is actually disabled but would likely no longer be disabled if she followed the prescribed treatment. Id. at *2, *5.

25.     SSR 82–59 normally applies to a claimant's eligibility for benefits after a finding of disability: "essentially, disability is found at step four, then non-compliance is used to deny at step five." Grubb v. Apfel, No. 98 CIV. 9032(RPP), 2003 WL 23009266, at *5 (S.D.N.Y. Dec, 22, 2003).  Under this ruling, "a claimant may be denied disability benefits if the Secretary finds that [the claimant] unjustifiably failed to follow prescribed treatment and that if [the claimant] had followed the treatment, [the claimant] would not be disabled under the Act." Grubb, 2003 WL 23009266, at *4 (citing McFadden v. Barnhart, No. 94 Civ. 8734(RPP), 2003 WL 1483444, at *8 (S.D.N.Y. Mar. 21, 2003)); accord 20 C.F.R. § 416.930(a); SSR 82–59. "An individual who would otherwise be found to be under a disability, but who fails without justifiable cause to follow treatment prescribed by a treating source which the SSA determines can be expected to restore the individual[']s ability to work, cannot by virtue of such 'failure' be found to be under a disability." Benedict v. Heckler, 593 F. Supp. 755, 759 (E.D.N.Y. 1984) (quoting SSR 82–59).  In this present case, SSR 82-59 does not apply because the ALJ did not determine that Plaintiff was disabled.  Because the ALJ never found Plaintiff's impairments disabling, the ALJ did not err in declining to apply SSR 82-59.

26.     Having considered Plaintiff's challenges, this Court is satisfied that the ALJ committed no reversible error, and that his decision is based on substantial evidence. Defendant's Motion for Judgment on the Pleadings is therefore granted and Plaintiff's motion seeking the same relief is denied.

IT HEREBY IS ORDERED, that Plaintiff's Motion for Judgment on the Pleadings (Docket No. 11) is DENIED.

FURTHER, that Defendant's Motion for Judgment on the Pleadings (Docket No. 15) is GRANTED.

FURTHER, that the Clerk of Court is directed to CLOSE this case.

SO ORDERED.

Dated:   October 16, 2016
         Buffalo, New York


                                        /s/William M. Skretny
                                      WILLIAM M. SKRETNY
                                   United States District Judge